MOSES CALL *et al.*, in equity, *vs.* WILLIAM J. PERKINS *et als.*

Lincoln, 1874.—November 10, 1876.

*Equity. Trial. Husband and wife. Deed.*

Real estate, paid for by a married man but conveyed to his wife, cannot be conveyed by her without the joinder of her husband; the joinder may be in the same or a separate deed.

If the husband paid only in part, his interest may be taken to pay his prior contracted debts, even though he have other property.

When a creditor of the husband seeks to hold land which the latter has not owned since the debt accrued, but which he has paid for and procured to be conveyed to his wife, resort must be had to equity.

If the creditor makes a levy, he may then invoke equity to complete his title.

If the bill contain the substantive requirements of the statute, it is sufficient.

Prior to the Stat. 1873, c. 130, it was within the discretion of the law court to frame issues for a jury trial in suits in equity. That statute made it imperative on such court, on motion of either party.

ON EXCEPTIONS.

BILL IN EQUITY, praying for relief, and that the plaintiffs' title by levy to certain real estate may be decreed good and valid.

The following facts appear:

June 5, 1864, the plaintiffs sued out a writ against William J. Perkins for $500, on account annexed that accrued in 1856 for earnings of a ship. June 25, 1864, all the debtor's interest in real estate was attached on that writ, and on the 28th of June, 1864, within five days, the attachment was recorded. The action was duly entered; and through a certificate from the law court, judgment was rendered in vacation November 20, 1868; execution issued January 15, 1869; and February 13, 1869, a levy was made on the equity of redemption in the land in dispute, for $690.33, in full satisfaction of the execution. This is the title of the plaintiffs.

May 10, 1862, this land was conveyed by James Perkins, the father of the debtor, to Elizabeth A. Perkins, the wife of the debtor, for $1500; $500 was paid down, and ten notes were given to the grantor of $100 each, and payable one each year, signed by Mrs. Perkins, and secured by a mortgage signed by her alone. Three of these notes were paid prior to April 7, 1863. On that

day this mortgage was canceled, and the seven unpaid notes were given up and seven new ones were given of $105.55 each, signed by the husband, and secured by a new mortgage from the wife. One of these seven notes was paid by somebody in May, 1864, leaving six due. Mrs. Perkins by her sole deed, deeded to Fossett and Wheeler this equity of redemption, June 20, 1864, which was recorded June 27, two days after the attachment of the plaintiffs.

October 28, 1864, Wheeler and Fossett deeded the same equity of redemption to the defendant, Tukey. Tukey afterwards paid three of the notes secured by the mortgage, and the plaintiff, Call, then purchased of James Perkins the mortgage and the three unpaid notes, and took an assignment thereof. Afterwards Tukey repaid to Call the amount of said three notes, but the mortgage was not formally discharged.

The plaintiffs have the title of William J. Perkins, the husband, to this equity of redemption, by their attachment, judgment, and levy with the rights of prior creditors.

The defendant has the title of Mrs. Perkins, the wife, by her sole deed.

The suit is brought to determine which of these two parties has the paramount right in equity to this right of redemption.

The bill was filed September term, 1869. At the April term, 1872, the defendant Tukey filed a motion for a jury trial. The presiding justice ruled as matter of law that Tukey was not entitled to a jury trial and for that reason overruled the motion, and the said Tukey alleged exceptions.

At the April term, 1874, the testimony of both parties having been taken, so far as they deemed it necessary to have it taken in writing, the defendant, Tukey, claimed the right to have a jury trial, by virtue of the act of the legislature of 1873, c. 130, and made a motion in writing therefor, in the form following:

"Whereas, in the bill of complaint in the above entitled cause, it is alleged, that James Perkins contracted with William J. Perkins, son of the said James, to sell him the Perkins farm, which is the subject of litigation in this case, for the consideration of $1500, and that the said William J., being indebted to the plaintiffs on an

account in the bill named, with the view of placing the title of the premises beyond the reach of his said creditors, caused the said James to make the deed of the premises so contracted for, to Elizabeth A. Perkins, the wife of the said William J., and that said James accordingly, on the 10th day of May, A. D. 1862, made the deed of said premises to said Elizabeth A., and that the said William J. then and there paid to the said James, the sum of $500, part of said consideration for the premises, and that the said Elizabeth A. never paid any of the notes which were given by her, in payment of the balance of said consideration, nor any part of the consideration for the said conveyance to her of the said premises, which said facts are denied by Marius H. Tukey, one of the defendants in said suit, upon information and belief in his sworn answer to this suit:

And whereas, it is alleged in said bill of complaint, that said conveyance to the said Elizabeth A. Perkins, was in fraud of the creditors of her said husband, William J. Perkins, and in law a trust for his and their use, and that Cyrus Fossett and Francis Wheeler, the grantees of the said Elizabeth A., of the said premises, and also that the said Marius H. Tukey, the grantee of the said premises, of the said Fossett and Wheeler, as is set forth in said bill, had at the time when they received their conveyance of the said premises, respectively, full knowledge of all the facts alleged in said bill, as aforesaid, relating to the conveyance of said premises by said James Perkins, to said Elizabeth A. Perkins, and that they had knowledge of the payment of the consideration therefor by the said William J., and that said conveyance was in fraud of the creditors of the said William J., and in law a trust for his and their use; which said allegations in said bill are denied in the answer of said Tukey:

And whereas the said Tukey in his said answer, alleges that he purchased said premises in good faith, and paid the full value thereof, without any knowledge, information or belief that the said Elizabeth A. Perkins, or the said Fossett and Wheeler held or had ever held said premises in trust for the said William J. Perkins, or his creditors, or in fraud of their rights; and upon

information and belief the said Tukey alleges, that the said Fossett and Wheeler purchased the said premises, and had paid and agreed to pay the full value thereof, and that they held the same in good faith, without any fraud on their part, or knowledge of fraud in others :

Wherefore the said Tukey humbly prays this honorable court, that an issue may be framed, and a jury empaneled to try the several allegations in said bill hereinbefore set forth ; and to determine the truth of the allegations in the answer of the said Tukey hereinbefore set forth ; and especially that he may have the privilege of a jury trial upon all the charges of fraud, which are set forth in said bill against him."

The court overruled the motion *pro forma,* as matter of law, as one which it was not competent for the court to entertain. To which ruling and decision, the said Tukey excepted.

*A. P. Gould,* for the defendants.

*J. Baker,* for the plaintiffs.

VIRGIN, J. By the common law the husband became seised of a freehold estate in the real property of his wife, the usufruct continuing his during their joint lives. By virtue of the provisions of the Stat. of 1844, c. 117, the rule of the common law was so modified that she might become the owner of real or personal estate, by the usual modes of transfer and succession, in her own name, and as of her own property, and hold it exempt from any liability for the debts or contracts of her husband ; and her marriage had no effect upon her absolute dominion over her property owned before marriage. After that statute became operative, her control of her estate irrespective of the time when it was acquired, was unlimited. *Southard* v. *Plummer,* 36 Maine, 64. *Southard* v. *Piper,* 36 Maine, 84.

This exemption was modified by engrafting a well established principle into the statute which provided that if the property was purchased after marriage with the money or other property of the husband, or that being his it was conveyed to her directly or indirectly, without adequate consideration, and so that his creditors might thereby be defrauded, it shall be held for the payment

of his prior contracted debts—thus authorizing a subsequent conveyance directly from the husband to his wife, but in cases of fraud loading the property thus transferred with the prior debts of the husband on due proceedings. Stat. 1847, c. 27. *Johnson* v. *Stillings*, 35 Maine, 427.

These statutes being in derogation of the common law and therefore construed strictly (*Swift* v. *Luce*, 27 Maine, 285) conferred upon a married woman the right to purchase, own and control property without let or hindrance on the part of her husband, but contained no authority on her part to sell and convey. In respect to the sale and transfer of her property, her rights and powers were still to be found in the common law. And by the rules of the common law a *feme covert* can convey the fee in her real estate only by a deed executed by herself and her husband,—her sole deed being a nullity and conveying no estate. *Lithgow* v. *Kavanagh*, 9 Mass., 172. *Allen* v. *Hooper*, 50 Maine, 371. *Bean* v. *Boothby*, 57 Maine, 295. *Beale* v. *Knowles*, 45 Maine, 479. *Eaton* v. *Nason*, 47 Maine, 132. *Brookings* v. *White*, 49 Maine, 479. *Jewett* v. *Davis*, 10 Allen, 71.

On account of this disability, and for the purpose of removing it the legislature subsequently conferred upon "any married woman power to lease, sell, convey and dispose of" her real and personal property, "and execute all papers necessary thereto, in her own name, as if she were unmarried." Stat. 1852, c. 227. And lest that language might not be considered sufficiently specific to exclude the necessity of the husband's joinder, the words, "by her separate deed," were interpolated. Stat. 1855, c. 120. These statutes entirely removed her disability in this respect by conferring upon her full, complete and unrestricted power to "lease, sell and convey" to any and all persons including her husband. *Allen* v. *Hooper*, 50 Maine, 371. *Brookings* v. *White*, *sup.*

One of the practical results of this legislation was to aid certain classes of men in putting their real estate beyond the reach of their creditors by furnishing another confidential friend as grantee. The possession being apparently the same, the change of title would not become known until the creditor began to urge payment, when for the first time he would learn that the title had

some considerable time since passed to the wife, and that he was a subsequent, instead of a prior creditor. In numerous instances the title of real estate of married men in embarrassed circumstances was transferred to their respective wives and thence to third persons, thereby clogging the proof of fraudulent conveyances by this other remove from the original fraudulent grantor.

To remedy this condition of things among others, the following statute was passed :

"No conveyance of a married woman of any real estate conveyed to her directly or indirectly by her husband, paid for directly or indirectly by him, or given or devised to her by her husband's relatives, shall be deemed valid, unless her husband shall join with her in such conveyance." Stat. 1856, c. 250. This limited the power of a married woman to convey some of her property by her separate deed and without the joinder of her husband, and this made an exception to her otherwise unrestricted authority. And it was so expressed in Shepley, C. J.'s report of his revision to the legislature in 1856. In other words, R. S., of 1857, c. 61, § 1, remains as it was written by him with this verbal difference only, to wit : instead of "but" in the fifth line, the report read "except," with "which" before "cannot" to complete the grammatical construction. All the foregoing statute provisions are substantially preserved in § 1, although expressed in briefer terms, as will readily be seen by the language, so much of which as is material to our present inquiry, is as follows :

"A married woman may own in her own right, real estate acquired by . . . purchase ; and may sell and convey the same without the joinder or assent of her husband ; but real estate directly or indirectly conveyed to her by her husband, or paid for by him, . . . cannot be conveyed by her without the joinder of her husband in such conveyance."

"The language of R. S., c. 61, § 1," in the language of Danforth, J., in *Bean* v. *Boothby*, 57 Maine, p. 301, "limits the wife's capacity to convey such real estate only, as has been directly or indirectly conveyed to her by her husband, or paid for by him," such real estate in the unambiguous and peremptory terms of the statute, "cannot be conveyed by her without the joinder of her husband." To

be sure a separate deed by each though executed at different dates
may be sufficient.   *Strickland* v. *Bartlett,* 51 Maine, 355.   But
"no conveyance" without a joinder, "shall" (in the emphatic lan-
guage of Stat. 1856, c. 250, of which "this provision is substantial-
ly a re-enactment," *Strickland* v. *Bartlett,*) "be deemed valid."
Such a conveyance then must be, as to prior creditors of the hus-
band at least, *ipso facto,* void.   Moreover, the result is the same
whether this clause in § 1 is considered as an exception to the gen-
eral abrogation of the common law rule applicable to the power
of a married woman, to convey, or as a positive prohibition by
the statute.

The legal title never having been in the husband, W. J. Per-
kins, it is not, and cannot be successfully, contended that he
"directly or indirectly conveyed" the premises in controversy to
his wife.   *Bean* v. *Boothby, sup.*  The plaintiffs however contend
that although the wife derived her title directly from James Per-
kins, that it was "paid for by her husband."   If this allegation be
true, the separate deed of Elizabeth A. Perkins, of June 20, 1864,
to Fossett & Wheeler, so far as these plaintiffs as prior creditors
of W. J. Perkins are concerned, conveyed nothing ; and whether
or not her grantees or those holding under them were *bona fide*
purchasers for a valuable consideration without notice that the
husband paid the consideration of the deed to her, becomes imma-
terial. ·

Under one of the provisions of R. S., c. 61, § 1, property con-
veyed to a married woman, but paid for by her husband, may be
taken as his to pay his prior contracted debts.  Such property need
not be wholly paid for by the husband, but if paid for in part by
him, his interest may be taken.  *Sampson* v. *Alexander,* 65 Maine,
*post.*  And the fact that the husband has other property which
may be reached by some other mode, imposes no legal duty upon
the creditor to pursue that course and take that property, in pre-
ference to this.  *Gray* v. *Chase,* 57 Maine, 558.   *Hamlen* v. *Mc-
Gillicuddy,* 62 Maine, 268.   It is the privilege of the creditor,
and not of the debtor or those who hold his property, to elect
which shall be taken.

Such property may be taken although the parties are guilty of

no actual or intentional fraud. *Sampson* v. *Alexander, sup.*, and cases therein cited. But it is sufficient if the allegations sustained by proof meet the substantive requirements of the statute, setting forth the conveyance, payment therefor in whole or in part from the property of the husband, and that the debt for the payment of which the land is sought to be taken, accrued before the conveyance. *Hamlen* v. *McGillicuddy, sup.* The allegations in this bill are within this rule although there are also allegations of fraud.

When a creditor of the husband elects to hold land which the latter has not owned since the debt accrued, but which he has paid for and procured to be conveyed to his wife, the legal title does not thereby become vested in the husband, and it cannot therefore be "taken as the property of her husband" by a simple levy; but resort to equity becomes necessary. *Low* v. *Marco*, 53 Maine, 45. *DesBrisay* v. *Hogan*, id., 554 and cases *sup.* The creditor need not make a levy, but a return of *nulla bona* will be a sufficient preliminary proceeding. But when he has levied, he has exhausted his legal remedy so far as that land is concerned and then may invoke equity to perfect his statute right. *Gray* v. *Chase*, and other cases already cited.

Whether or not W. J. Perkins paid any, and if any, what part of the consideration for the conveyance by James Perkins to Elizabeth A. Perkins, of May 10, 1862, becomes a material inquiry. It is a question of fact; and the burden of establishing it is upon the plaintiffs, the deed making a *prima facie* case in behalf of the defendant. *Winslow* v. *Gilbreth*, 50 Maine, 90.

The defendant has moved for a trial of this issue by a jury. Whether or not he is entitled to it of right under the constitution, we need not now inquire. It is within the province of the court sitting in equity to order such a trial on its own motion. And when the fact in controversy is peculiarly fit and suitable for a jury to try, the court, in the absence of any statute requiring it, have ordered it on motion of either party.

In this state the law court is the court of equity; and a single justice at *nisi prius*, under our revised statutes, has no occasion to examine into the merits of a suit in equity before the cause is

brought to a formal hearing, except so far as the rules provide. Such is the general practice in chancery. And the Stat. of 1873, c. 130, simply makes it imperative upon the court to order such an issue when requested by either party—the language "and direct the same to be tried in the county where such cause is pending," clearly indicating that the order was not intended to be made there. Such was the early practice here as appears by the order in *Bean* v. *Herrick*, 12 Maine, 263.

In the case at bar, the controversy is of such a character, and the testimony is so conflicting and has been taken in such a manner that we deem it eminently proper that the main controverted fact be submitted to a jury of the vicinity, and to the end that the jury may see as many of the witnesses as possible and hear their testimony from the stand, we shall exercise the discretion of directing what testimony may be used.

And now on motion of the defendant and after hearing of the parties, it is ordered that an issue be framed by the parties for the purpose of submitting to a jury the following question : was any and how much of the consideration of the deed of May 10, 1862, given by James Perkins to Elizabeth A. Perkins, paid from the property of William J. Perkins. And it is further ordered that said issue stand for trial at the term next to be held in the county of Lincoln ; that the plaintiff here shall be the plaintiff in the trial at law ; and that the parties at such trial may read in evidence such and so much as is material, and none other, of the depositions taken before the publication of the testimony on Feb. 19, 1872, excepting the depositions of such deponents as are actually in attendance at said trial, together with such other depositions as may be taken by either on or before April 1, next, including the oral testimony of any witnesses, which shall be competent, the verdict to be certified to the chief justice of the court. And all further directions are reserved until after the trial of said issue.

APPLETON, C. J., WALTON, DICKERSON and DANFORTH, JJ., concurred.